Submitted on record and briefs January 24, reversed and remanded June 1, petition for review denied September 27, 2005 (339 Or 406)

## DEAN PAUL MOSER,
*Respondent,*

*v.*

## Robert LAMPERT,
Superintendent,
Snake River Correctional Institution,
*Appellant.*

00-08-464-M; A123232

112 P3d 482

■■■■■■■■■■■■■■■

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Timothy A. Sylwester filed the brief for appellant.

David E. Groom filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

ARMSTRONG, J.

■■■■■■■■■■■■■■

---

* Brewer, C. J., *vice* Leeson, J. pro tempore.

## ARMSTRONG, J.

The state appeals from a judgment that granted petitioner post-conviction relief. The court granted petitioner a new criminal trial based on a determination that his trial counsel had provided constitutionally deficient representation by failing to challenge the competency of one of the state's witnesses. The court also concluded that petitioner was entitled to a delayed appeal of his convictions as an alternative form of relief, based on its conclusion that trial counsel had provided constitutionally deficient representation by failing to arrange for a timely notice of appeal to be filed. We reverse and remand.

■■ Petitioner was convicted in September 1999 of two counts of first-degree sexual abuse. His trial counsel told him that he would arrange for a direct appeal of the conviction, but counsel failed to do that. Petitioner filed his original petition for post-conviction relief in this case in August 2000. He filed his second amended petition for post-conviction relief in September 2002. In that petition, he alleged that his trial counsel had provided him with constitutionally deficient legal assistance in a number of respects. The post-conviction court concluded that counsel had failed to provide constitutionally adequate assistance in two respects: by failing to arrange for a direct appeal and by failing to request a competency hearing for one of the state's witnesses, SB, the 12-year-old girl whom the jury found that defendant had abused. Without addressing the other grounds on which petitioner relied, the court ordered a new trial. The state appeals. We write solely to address the state's argument that petitioner was not prejudiced by trial counsel's failure to challenge SB's competency.

> "The principles that govern a claim of inadequate assistance of counsel, as applicable to this case, are well-settled. Under Article I, section 11, of the Oregon Constitution, petitioner must show that his counsel 'failed to exercise reasonable professional skill and judgment, and that petitioner suffered prejudice as a result.' *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002). Prejudice occurs when counsel's deficient performance has a 'tendency to affect the

result of the prosecution' of a petitioner's underlying criminal case. *Id.* (emphasis omitted). Similarly, to establish ineffective assistance of counsel under the Sixth Amendment to the United States Constitution, petitioner must prove that counsel's assistance was unreasonable and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Strickland v. Washington*, 466 US 668, 687-94, 104 S Ct 2052, 80 L Ed 2d 674 (1984)."

*Hall v. Lampert*, 196 Or App 285, 290, 100 P3d 1138 (2004), *rev den*, 338 Or 301 (2005).

■ We assume without deciding that, had petitioner's counsel exercised reasonable professional skill and judgment, he would have asked the trial court to conduct a competency hearing for SB and the trial court would have concluded that SB was not competent to testify. We therefore consider only whether petitioner established that he was prejudiced by his counsel's failure to request a competency hearing. Our resolution of that issue requires us to consider all of the evidence presented at petitioner's criminal trial to determine if the admission of SB's testimony prejudiced petitioner. *Harris v. Morrow*, 186 Or App 29, 38, 63 P3d 581, *rev den*, 335 Or 479 (2003).

It was uncontested in the criminal trial that petitioner had touched SB's vagina, once briefly and once for a period ranging from 30 seconds to five minutes in length, and that he had rubbed her vagina at least five to ten times during the second episode.

SB testified at trial that petitioner had touched her vagina twice and described details of the two episodes, including how petitioner had touched her. She said that petitioner did not say much during the two events but that he did tell her to go to sleep, to go to bed, and asked whether she needed to go to the bathroom. SB's mother testified that petitioner had told her that he had twice put his hands down SB's pants and touched SB on "her clit. Her private area." She also testified that petitioner had told her that he did so in an effort to teach SB "how to protect herself" from sexual abuse.

Another witness, Officer Enz, testified about an interview that he had conducted with petitioner. Enz testified that petitioner had said that "[SB] was always curious about sex and that he had created a no touching rule. And that she did not even sit on his lap." Petitioner explained that he had caught SB masturbating several times; that after seeing SB masturbate he had had subconscious sexual intentions towards SB; and that he had touched SB "[t]o show her what could happen if someone started and did not stop." Petitioner also described how he had touched SB and said that he touched her under her clothes. In response to Enz's question about whether petitioner had rubbed SB's vagina in a sexual way, petitioner said, "Right." Petitioner also said that he had felt SB's pubic hair, that his heart rate and breathing rate were elevated when he touched SB, and that he was physically stimulated at the time. Petitioner denied, however, that he was sexually stimulated and denied having an erection. Enz also testified that petitioner said:

"It's not right. I know it's not right. Several times I could have had sex with [SB] but I always said no. I care for [SB and her mom]. I always wanted a father image. She wanted a boyfriend. That's why there was a no touching rule. I care for [SB] as a father, not a boyfriend.

"You don't know how many 12 year old girls have hit on me. I mean, you get some 13 year old girls with halter tops and shorts up the crack of their ass. It's hard. Real hard."

Williamson, a social worker, testified that petitioner had told her that

"in the midst of trying to discuss with [SB] where and what her private parts were that he did touch her. And I asked 'Where did you touch her?' And he said, 'above her hair line.' "

Williamson stated that petitioner had denied having done so for sexual reasons. Dr. Carr also testified that she had examined SB and that, during the course of the examination, SB had told her that "[petitioner] touched my vagina."

Petitioner testified at trial that he had touched SB. He said he had done so because SB had a chronic problem with inappropriate touching and he had decided to do something about it. He wanted "[t]o explain to her about what she

was doing in the bathroom, the touching of herself. To explain to her that if she did that in front of people that if she let the people touch her that she could get hurt." He stated that, during the second, longer incident, he touched her and said, "Is this what it [felt like] when you [were] in the bathroom? Is this what you really want? If you keep up these activities and you let somebody touch you here, you are going to get hurt. You are going to get raped." Petitioner testified that he was motivated to touch SB because he "wanted to make a point to [SB and SB's mother] that [SB] needs to be able to distinguish and say no. And also to wake [SB's mother] up. She needs to know that this is seriously something that she needs to deal with."

Petitioner contended at his criminal trial that he had not committed the crime of sexual abuse in the first degree when he touched SB because he had not touched her for purposes of sexual gratification or arousal. As that argument suggests, an element of the crime of first-degree sexual abuse is the "touching of the sexual or other intimate parts of a person * * * for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6); ORS 163.427(1)(a). On appeal and before the post-conviction court, petitioner argues that he was prejudiced by his counsel's failure to challenge SB's competency because the jury likely believed SB's testimony that petitioner had not said much to her when he touched her and therefore disbelieved petitioner's testimony that he had told her that he was touching her because he was concerned with her welfare and wanted to help her avoid sexual abuse in the future.

In light of all of the evidence presented at trial, we cannot say that SB's testimony had a tendency to affect the outcome of the prosecution or that, in the absence of that testimony, there is a reasonable likelihood that the result of the proceeding would have been different. There is overwhelming evidence other than SB's testimony that, despite petitioner's protestations to the contrary, he touched SB in a sexual manner by repeatedly rubbing her vagina and that he did so for his own sexual gratification. Petitioner was aroused when he touched SB. He had sexual feelings for SB and young girls in general. His stated purpose is inconsistent with his actions in that there was no need for him to touch SB

sexually in order to warn her of the dangers of sexual touching. At best, petitioner conflated a desire to abuse SB sexually with a desire to prevent her from being sexually abused by others. Therefore, petitioner was not prejudiced by his counsel's failure to challenge SB's competency to testify, and the trial court erred in granting petitioner relief on that ground. We therefore reverse and remand the case to allow the trial court to consider petitioner's remaining grounds for post-conviction relief and, if appropriate, to grant petitioner a delayed appeal of his convictions.[1]

Reversed and remanded.

---

[1] The state concedes that petitioner is entitled to a delayed appeal of his convictions if he is not otherwise entitled to a new trial as a consequence of having received constitutionally deficient representation at his criminal trial.